UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMINE S. FULGHUM,

                Plaintiff,        Civil Action No. 15-13894
                                        Honorable Avern Cohn
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]**

       Plaintiff Jasmine S. Fulghum ("Fulghum") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 10], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

       For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Fulghum is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [10] be GRANTED, Fulghum's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On November 27, 2012, Fulghum filed applications for DIB and SSI, alleging a disability onset date of November 20, 2012. (Tr. 134-43). These applications were denied initially on March 6, 2013. (Tr. 81-88). Fulghum filed a timely request for an administrative hearing, which was held on January 22, 2014, before ALJ Oksana Xenos. (Tr. 33-64). Fulghum, who was represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Don Harrison. (*Id.*). On February 27, 2014, the ALJ issued a written decision finding that Fulghum is not disabled under the Act. (Tr. 19-29). On September 16, 2015, the Appeals Council denied review. (Tr. 1-5). Fulghum timely filed for judicial review of the final decision on November 4, 2015. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

> and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Fulghum's Reports and Testimony

At the time of the administrative hearing, Fulghum was 35 years old, and at 5'5" tall, weighed 187 pounds. (Tr. 37). She lived in a house with four of her six children, who ranged in age from nineteen to three. (Tr. 38, 42, 172). She had completed high school and was taking college classes four days a week. (Tr. 37, 39, 167). Previously, she worked as a short order cook. (Tr. 38, 158). However, she stopped working in November 2012 when she injured her back lifting a box at work. (Tr. 166, 202).

Fulghum alleges disability as a result of back pain, which she described as "burning" and "stabbing" in nature. (Tr. 53, 166). She testified that she received "shots" in her back in 2013, which helped immensely ("[f]or a month and a half [she] felt like nothing was wrong"), but the pain eventually returned. (Tr. 54). Her physician also prescribed physical therapy, but because she switched insurance, she did not complete the recommended course of treatment. (Tr. 52-53).

Fulghum also alleges that she gets headaches two or three times a week, for which she takes Motrin. (Tr. 54-55).

Fulghum testified that she is able to perform household chores, such as washing dishes, doing laundry, preparing meals, and caring for her two dogs, with the help of her children and the father of her youngest child.[1] (Tr. 45-46, 50-51). She is able to drive and, indeed, drives her children to and from the bus stop or school and drives herself to her classes. (Tr. 39, 40, 175). Fulghum testified that she can lift approximately 15 pounds "comfortably," can sit for two hours at a time, stand for one hour at a time, and walk one mile. (Tr. 39-40). She has no problems with her fingers or hands. (Tr. 40). She goes shopping once or twice a week, volunteers at and attends church, and plays cards three times a week. (Tr. 41, 175-76). Fulghum further testified that she takes Motrin (which upsets her stomach) and Flexeril, and uses "medical"[2] marijuana two or three times a day (which makes her drowsy). (Tr. 42-43, 48).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Fulghum's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Don Harrison testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 58-64). The ALJ asked the VE to imagine a claimant of Fulghum's age, education, and work experience who can perform light work, with the following additional limitations: no

---

[1] In her December 2012 function report, when asked to describe her daily activities, Fulghum stated: "Get my kids up for school, fix breakfast, take them to school, feed & clean up after my dogs, tend to my indoor garden, fix lunch, run errands, fix dinner, go get kids from school, do homework, laundry, do hair, assist with baths, clean up for the nite [sic]." (Tr. 173).

[2] Although Fulghum testified that she uses "medical" marijuana, the record contains no such physician certification.

climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; and frequent reaching overhead. (Tr. 58-59). The VE testified that the hypothetical individual would be capable of performing Fulghum's past relevant work as a short order cook. (*Id.*). The VE further testified that the hypothetical individual also would be capable of working in the jobs of small products assembler (125,000 jobs nationally), office helper (75,000 jobs), and nut and bolt packer (100,000 jobs). (Tr. 59-60).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Fulghum is not disabled under the Act. At Step One, the ALJ found that Fulghum has not engaged in substantial gainful activity since November 20, 2012 (the alleged onset date). (Tr. 21). At Step Two, the ALJ found that Fulghum has the severe impairment of a spine disorder. (Tr. 22). At Step Three, the ALJ found that Fulghum's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Fulghum's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; and frequent reaching overhead. (Tr. 20).

At Step Four, the ALJ determined that Fulghum is capable of performing her past relevant work as a short order cook. (Tr. 27). In the alternative, the ALJ determined at Step Five of the sequential evaluation analysis, based in part on the VE's testimony, that Fulghum is capable of performing a significant number of jobs that exist in the national economy. (Tr. 28). As a result, the ALJ concluded that Fulghum is not disabled under the Act. (Tr. 29).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In her motion, Fulghum argues that the ALJ erred in: (1) assessing her RFC; and (2) evaluating her credibility. Each of these arguments is addressed below.

*1.     The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ determined that Fulghum has the RFC to perform light work, except she can frequently reach overhead; occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. (Tr. 20).

In her motion, Fulghum argues that the ALJ's RFC finding does not contain the requisite "narrative discussion" describing how the evidence supports each of her conclusions. (Doc. #9 at 10-12). Social Security Ruling ("SSR") 96-8p requires that an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *7 (July 2, 1996). Contrary to

7

Fulghum's argument, however, the RFC assessment meets this standard, as the ALJ discussed both the objective and subjective evidence she considered in formulating Fulghum's RFC.

The ALJ specifically found that Fulghum's back pain limits her to a limited range of light work. (Tr. 26). In reaching this conclusion, the ALJ noted that, on October 23, 2012, Fulghum presented to the emergency room complaining of back pain for the past 1 ½ weeks. (Tr. 24, 232). On examination, she had paraspinal muscle tenderness only when she was asked if tenderness was present (not when distracted). (Tr. 233). Urinalysis was positive for a urinary tract infection, and a "possible lower back sprain" was noted. (Tr. 234). The ALJ also noted that, on October 27, 2012, Fulghum returned to the emergency room, again complaining of low back pain. (Tr. 24, 295). X-rays of the lumbar spine revealed no compression fracture or spondylolisthesis, and a final impression of acute muscle spasm and acute lower lumbar spine strain was assessed. (Tr. 298, 313). The ALJ also noted that an MRI of Fulghum's lumbar spine performed on November 13, 2012, revealed moderate L4-L5 posterior facet arthropathy causing grade I L-5 anterolisthesis, L5 degenerative disc disease, and mild L5 disc herniation causing impingement on the central bilateral S1 nerve. (Tr. 26, 212).

The ALJ further noted that, on February 23, 2013, the consultative examiner, Dr. Montasir, found that while Fulghum had a reduced range of motion in the lumbar spine with flexion and extension, she had no range of motion deficits in her cervical spine, shoulders, elbows, hips, knees, ankles, wrists, hands, or fingers.[3] (Tr. 26, 203, 205-06). The ALJ also observed that, at the consultative examination, Fulghum was able to squat to 60% of distance and recover and get on and off the examination table. (Tr. 26, 204). Indeed, Dr. Montasir opined that Fulghum could perform work activity, so long as it did not involve lifting, pushing,

---

[3] Moreover, the ALJ referenced Fulghum's testimony that she had no problems using her hands or fingers, as well as clinical examination findings of good handgrip strength. (Tr. 26, 40, 203).

8

or carrying more than 60 pounds; had no limitation with respect to walking, standing, climbing stairs, or manipulating; but should not climb ropes, ladders, or scaffolding. (Tr. 204).

The ALJ also discussed Fulghum's independent medical examination, conducted on July 31, 2013, by Miles Singer, D.O., noting that the clinical findings were "essentially unremarkable." (Tr. 26, 320-24). Indeed, at this examination, Fulghum's range of motion was within normal limits in her lumbar, cervical, and thoracic spines; no tenderness was noted; she had full strength; and her gait was within normal limits. (Tr. 322-23). Dr. Singer offered an impression of resolving lumbar sprain. (Tr. 323). In conclusion, he found "no evidence of ongoing physical impairment," and concluded that Fulghum was "capable of returning to her work endeavors without restrictions." (Tr. 323-24).

Having discussed all of this medical evidence, the ALJ then specifically found that Fulghum's back pain limited her to a range of light work. (Tr. 26). In addition, the ALJ concluded that in order to avoid exacerbation of Fulghum's symptoms, she would be limited to occasionally climbing stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; and, considering her marijuana use and potential drowsiness, she would be precluded from climbing ladders, ropes, or scaffolds. (Tr. 26).

In the face of all of this evidence, Fulghum appears to advance two arguments. First, she references the opinions of Dr. Montasir (Tr. 202-05) and the state agency examining physician, Muhammad Khalid, M.D., who opined that she could perform medium work with no postural, manipulative, visual, communicative, or environmental limitations (Tr. 69-70). (Doc. #9 at 11-12). The ALJ specifically considered both of these opinions, stating:

> [T]he undersigned conservatively finds that the claimant is more limited than determined by the state agency examiner and the state agency medical consultant, and ascribes limited weight to their opinions to the extent they are inconsistent with the residual functional capacity assessed herein.

9

(Tr. 25). Fulghum argues, then, that the ALJ erred in formulating her RFC without relying on a specific medical opinion, having given "little weight" to the only two RFC opinions in the record.

When determining a claimant's RFC, it is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")). However, when evaluating the claimant's RFC, the ALJ is not required to base her RFC findings entirely on a physician's opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015); *see Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.") (internal quotations omitted). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Accordingly, the fact that the ALJ did not adopt the RFC from either Dr. Montasir's or Dr. Khalid's assessment is not error.

Fulghum also argues that the ALJ did not comply with SSR 96-8p, which requires a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling). (Doc. #9 at 12-13 (citing *Soc. Sec. Rul.* 96-8p, 1996 WL 374184, at \*5)). Indeed, she claims that "nowhere in the decision does the ALJ discuss [her]

10

ability to sit, stand, walk, lift, carry, push, and pull or the medical evidence that she relied on in resulting in her RFC finding …." (*Id.* at 13). This argument is without merit.

As an initial matter, the Sixth Circuit has rejected Fulghum's argument that the ALJ's decision must contain such an explicit, function-by-function discussion, stating as follows:

> "Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing …. [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table) (3d Cir. Dec. 19, 2000)). Moreover, in this case, the ALJ <u>did</u> assess Fulghum's ability to perform each of the seven strength demands, finding that she can perform light work, which – as defined by the regulations – involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, some pushing or pulling, and standing or walking for a total of approximately six hours in an eight-hour work day, with intermittent sitting during the remaining two hours. *See* 20 C.F.R. §§404.1567(b), 416.967(b); *Soc. Sec. Rul. 83-10*, 1983 WL 31251, at *6 (Jan. 1, 1983). Here, then, where the ALJ provided a detailed, thorough and fair discussion of the evidence, and considered the impact of that evidence on Fulghum's ability to perform work-related activities, the Court finds the RFC analysis sufficient. *See Delgado*, 30 F. App'x at 547-48.[4]

        2.    *The ALJ's Credibility Determination is Supported by Substantial Evidence*

Fulghum also argues that the ALJ's credibility analysis was deficient. (Doc. #9 at 13-15). Courts have recognized that determinations of credibility related to a claimant's subjective

---

[4] In challenging the ALJ's RFC finding, Fulghum also references her own testimony as to her limitations in walking, bending, lifting, standing, and carrying. (Doc. #9 at 13). The ALJ specifically found Fulghum's subjective complaints were not entirely credible, however, and this finding is supported by substantial evidence. *See* Section II.F.2, *infra*.

complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must then consider other evidence of pain, including (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, in concluding that Fulghum was less than fully credible, the ALJ noted that her allegations regarding her limitations were "significantly inconsistent with the record." (Tr. 26). Specifically, the ALJ first noted that the objective medical evidence weighed heavily against Fulghum's allegations (Tr. 23-26), and no treating or examining physician had opined that she was disabled (Tr. 26). The ALJ further referenced Fulghum's noncompliance with prescribed treatment, noting that she did not complete recommended physical therapy because of an insurance change. (*Id.*). The ALJ then noted Fulghum's testimony that she did not take Motrin or Flexeril during the daytime; the fact that the record reflects no significant longitudinal treatment history during the relevant time period; and the fact that she submitted no additional medical evidence after the hearing, despite the fact that the record was left open for that very purpose. (Tr. 26-27). The ALJ also considered Fulghum's extensive reported activities of daily

living – which include housekeeping, shopping, folding laundry, preparing meals, childcare, driving, and attending college classes – reasonably finding that they belie her allegations of disabling pain. (Tr. 27).

In the face of all of the reasons articulated by the ALJ for discounting her credibility, Fulghum argues only that the ALJ erred in purportedly failing to properly discuss and/or consider the side effects of her medications – specifically, the "side effects of marijuana usage in relationship to [her] ability to perform sustained work activities …." (Doc. #9 at 14-15). This is simply incorrect. The ALJ did discuss Fulghum's medication use and resulting side effects, noting that she testified that she used Motrin, Flexeril, and medical marijuana, which caused drowsiness. (Tr. 23, 42-43, 48-49). The ALJ then limited Fulghum's RFC accordingly, finding that "[f]or safety reasons, considering [her] marijuana use and potential drowsiness, [she] cannot climb ladders, ropes, or scaffolds." (Tr. 26).[5] As such, the ALJ clearly considered the alleged side effects of Fulghum's medications when formulating her RFC, and Fulghum's mere disagreement with the ALJ's evaluation of the evidence does not establish error warranting remand.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

---

[5] The ALJ also noted the absence of any medical records documenting "significant side effects from medication," and Fulghum did not point to a single medical record which would belie that finding. Instead, she points only to her own testimony on that issue (Doc. #9 at 15), which testimony the ALJ reasonably discredited for the reasons stated above. The Court also notes that the medical records show she was "alert, awake, and oriented to time, place and person" when examined by Dr. Montasir on February 23, 2013, and when she received emergency care on October 23 and November 1, 2012. (Tr. 203, 233, 342). Moreover, when Fulghum saw a doctor on November 7, 2012, her "problems" were identified as being related to her back impairment, but there was no mention of drowsiness. (Tr. 330).

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [10] be GRANTED, Fulghum's Motion for Summary Judgment [9] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: November 21, 2016  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 21, 2016.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager